UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANA CRISTINE MOREY,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 2:16-cv-06491-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Lana Cristine Morey ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs addressing disputed issues in the case [Dkt. 22 ("Pltf. Br.") and Dkt. 28 ("Def. Br.")]. The Court has taken the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration, is substituted as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

In January 2013, Plaintiff filed an application for SSI, alleging disability as of August 9, 2010. [Dkt. 15, Administrative Record ("AR") 31, 182-91.] Plaintiff's application was denied at the initial level of review and on reconsideration. [AR 31, 95-98, 109-113.] On February 4, 2015, a hearing was held before Administrative Law Judge Katherine Loo ("the ALJ"). [AR 47-69.] On February 25, 2015, the ALJ issued an unfavorable decision. [AR 31-42.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. [AR 33.] At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, degenerative disc disease of the lumbar spine, status post left shoulder subacromial decompression, status post right shoulder arthroscopy, partial tear versus degeneration of the right common extensor tendon, and bilateral heel spurs. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 34]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work (20 C.F.R. § 416.967(b)), with the following limitations:

> [S]he can lift and carry 20 pounds occasional[ly] and 10 pounds frequently; stand and walk 6 hours in an 8-hour day, 2 hours at a time with normal breaks; sit 6 hours of an 8-hour day, up to 2 hours at a time with normal breaks; grasp with bilateral upper extremities up to 4 hours; occasionally overhead reach, frequently reach in all other directions; and frequently finger, feel, climb, balance, stoop, kneel, crouch, and crawl.

[AR 35.] At step four, the ALJ found that Plaintiff was unable to perform any past

relevant work. [AR 40.] At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including representative occupations such as cashier, inspector/hand packager, and storage facility rental clerk, based on Plaintiff's RFC, age (51 years at time of application), education, and work experience. [AR 40-41.]

The Appeals Council denied review of the ALJ's decision on June 29, 2016. [AR 1-4.] This action followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by: (1) determining that Plaintiff could perform other work; (2) failing to fully address the opinion of a treating physician; and (3) failing to fully develop the record. [Pltf.'s Br. at 4-17.]

### A. Other Work

Plaintiff contends that her RFC prevents her from performing the jobs that the vocational expert ("VE") identified at the administrative hearing. [Pltf. Br. at 4-10.] More specifically, Plaintiff argues that she is precluded from working as a cashier, inspector/hand packager, or storage facility rental clerk because the "frequent handling" required by those jobs is incompatible with her limitation to grasping with her bilateral upper extremities no more than four hours in a workday. [Pltf. Br. at 4-5; AR 35.]

At the hearing, the ALJ presented the VE with a hypothetical question based on Plaintiff's RFC, including the limitation to grasping with the upper extremities up to four hours a day. [AR 67.] The VE offered three examples of jobs that could be performed with such limitations: cashier (Dictionary of Occupational Titles ("DOT") 211.462-010), inspector/hand packager (DOT 559.687-074), and storage facility rental clerk (DOT 295.367-026). [AR 66-68.] All three jobs require frequent handling, indicating that handling activities could be necessary for as much as two-thirds of the workday. (DOT 211.462-010, 559.687-074, 295.367-026). The VE testified that he considered "work where hand activity balances between fine manipulation and gross manipulation." [AR 67.] With respect to the cashier job, the VE explained that the job could be performed with Plaintiff's limitations if it involved "primarily cash handling," rather than stocking and grasping activities. [AR 67.] Given Plaintiff's restrictions, the VE concluded that the occupational base for the cashier job was reduced to about 10 percent of the total number of cashier jobs available (810,000 jobs available nationally and 87,600 jobs available in California), resulting in 81,000 cashier jobs available nationally and 8,800 jobs in California. [AR 66-67.] With respect to the inspector/hand packager and storage facility rental clerk jobs, the VE did not indicate there would be a reduction in the occupational base due to Plaintiff's grasping limitations.[2] [AR 66-68.] In response to the ALJ's inquiry, the VE testified that except where noted, his testimony was consistent with the DOT and when his testimony was inconsistent with the DOT, it was based on his experience and knowledge in placing people in the particular jobs identified, as well as other publications. [AR 69.]

---

[2] The VE noted that the hand packager/inspector job combines "gross and fine manipulation" activities and "[c]omes from a very large group of inspectors, testers, sorters, samplers, and weighers." [AR 67.] The VE testified that there were about 122,000 hand packager/inspector jobs available nationally and 14,200 available in California. [AR 67-68.] As for the storage facility rental clerk job, the VE testified that there were approximately 43,000 jobs available nationally and 7,900 jobs available in California. [AR 66-67.]

1  Plaintiff contends that the VE's testimony conflicts with the DOT because the jobs of cashier (DOT 211.462-010), inspector/hand packager (DOT 559.687-074), and storage facility rental clerk (DOT 295.367-026) require "frequent handling" (up to 66 percent of the workday), which conflicts with her limitation to grasping no more than four hours (fifty percent of the workday). She asserts the ALJ erred by failing to solicit an explanation from the VE for the apparent deviation from the DOT. Defendant asserts that Plaintiff waived any challenge to potential conflicts between the DOT and the VE's testimony by failing to raise the issue at the hearing. [Def. Br. at 1-2.] Further, Defendant argues that there is no conflict, as "handling" encompasses more than just grasping and the DOT does not indicate that the three jobs require any particular amount of grasping. [Def. Br. at 2-3.]

At step five of the sequential evaluation process, the burden shifts to the Commissioner to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. § 416.920(f); *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000).

The DOT describes the requirements for each listed job. *See Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015); *see also Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]."). In order for "the ALJ to rely on a job description in the [DOT] that fails to comport with a [claimant's] noted limitations, the ALJ must definitively explain this deviation" and "the record must contain persuasive evidence to support [it]." *Pinto*, 249 F.3d at 846-47 (internal quotations and citation omitted).

Additionally, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [VE] . . . evidence and information provided in the DOT." Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4. If there is

a conflict, the ALJ should "obtain a reasonable explanation for any apparent conflict." *See Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007); SSR 00-4p, 2000 WL 1898704, at *4.

Here, as a preliminary matter, the Court rejects Defendant's argument that Plaintiff waived the issue that there was an apparent conflict between the VE's testimony and the DOT by failing to raise it before the ALJ. The ALJ had an affirmative duty to inquire about such conflicts. *See Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017); *Massachi*, 486 F.3d at 1152-53; SSR 00-4p.

The Court also rejects Plaintiff's argument equating "handling" with "grasping," as the meaning of the two terms "are not the same." *Czajka v. Astrue*, No. SACV 09-00194-MAN, 2010 WL 3293350, at *3 (C.D. Cal. Aug. 18, 2010). "Handling" is a broad term. It includes activities such as, "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." SSR 85-15, 1985 WL 56857, at * 7. Thus, a job requiring "frequent handling" may involve grasping activities, but the job would not, as Plaintiff argues, necessarily require frequent grasping. [Pltf. Br. at 7-9]; *see Czajka*, 2010 WL 3293350, at *3 (explaining that "it is improper to conflate" grasping with handling, because "handling can mean simply touching or using the hands," whereas "grasping requires a firm hold or grip").

Further, to the extent the VE's testimony deviated from the DOT, the VE adequately addressed the apparent conflict with respect to the cashier job. *See* SSR 85-15, 1985 WL 56857, at *7 (explaining that because "[s]ignificant limitations" of handling "may eliminate a large number of occupations a person could otherwise do," testimony from a VE may be needed to determine the effects of a claimant's limitations). The VE's testimony established that a significant number of cashier jobs involving "primarily cash handling" could be performed with Plaintiff's RFC and limitation to grasping no more than four hours in a workday. [AR 66-67.] While Plaintiff disagrees with the VE's testimony, the VE specifically reduced the

6

number of available cashier jobs by 90 percent to account for Plaintiff's grasping limitation. [AR 66-67.] The VE also indicated that his testimony addressing the apparent conflict was based on his individual experience in placing individuals in similar jobs. [AR 69.] Thus, the ALJ fulfilled her duty to obtain a reasonable explanation for any variance from the DOT with regard to the cashier job.[3]

### B. Treating Physician's Opinion

Plaintiff contends the ALJ erred by failing to explain why she rejected the opinion of Plaintiff's treating physician, Dr. Bruce Fishman, regarding Plaintiff's limitation to lifting no more than fifteen pounds. [Pltf. Br. at 10-12; AR 476.] Defendant responds that the ALJ accorded Dr. Fishman's opinion some weight, but properly determined that Plaintiff was capable of lifting the slightly heavier amount of up twenty pounds occasionally based on the medical opinions of Dr. Rajeswari Kumar, a consultative examiner, and Dr. H. M. Estrin, a state agency medical consultant. [Def. Br. at 5-6; AR 88-91, 536-37.]

In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *See id.*; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Although the treating physician's opinion is entitled to deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ sets forth "specific and legitimate reasons that are supported by substantial

---

[3] Although the ALJ did not elicit an explanation from the VE for any deviation from the DOT with respect to the inspector/hand packager and storage facility rental clerk jobs, any error was harmless, given the significant number of available cashier jobs (81,000 jobs nationally and 8,800 jobs in California). *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (explaining that an ALJ's error was harmless if the error "was inconsequential to the ultimately nondisability determination"); *Massachi*, 486 F.3d at 1154, n.19.

7

evidence in the record." *Lester*, 81 F.3d at 830-31. "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Further, an ALJ need not accept the opinion of a treating physician if that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that ALJ properly rejected treating physician's opinion "because it was unsupported by rationale or treatment notes," and physician "offered no objective medical findings to support the existence of [plaintiff's] alleged conditions"). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035,1041 (9th Cir. 1995).

### 1. Dr. Fishman

Dr. Fishman began treating Plaintiff for work-related bilateral shoulder and upper extremity injuries in 2011. [AR 376, 460.] Dr. Fishman diagnosed Plaintiff with medial epicondylitis and flexor/pronator tendonitis of the bilateral elbows, lateral epicondylitis of the right elbow with partial tear of common extensor tendon, probable partial tear of radial collateral ligament of the left elbow, carpal tunnel syndrome of the bilateral wrists, impingement syndrome and infraspinatus tendinitis of the bilateral shoulders, and degenerative joint disease of the acromioclavicular joints in the bilateral shoulders. [AR 382, 469-70.] Plaintiff underwent operative arthroscopy of her bilateral shoulders and received epicondylar injections in her bilateral elbows. [AR 460-63.] In May 2013, Dr. Fishman issued a permanent and

stationary report and opined that Plaintiff could not lift more than fifteen pounds, push/pull more than twenty pounds, or use her upper extremities for forceful gripping/grasping activities, but she was able to use her upper extremities for overhead activities occasionally. [AR 476.]

In September 2013, Dr. Fishman reviewed an April 2013 Qualified Medical Evaluation report prepared by Dr. Clive Segil. [AR 493-94.] Dr. Segil did not assess any lifting limitations, but found that Plaintiff could not grasp more than four hours or reach, push, and pull more than four to six hours. [AR 494.] After reviewing Dr. Segil's report, Dr. Fishman stated that his opinions and recommendations, as stated in his May 2013 permanent and stationary report, remained unchanged. [AR 497.]

### 2. Dr. Estrin

In October 2013, the state agency medical consultant, Dr. Estrin, completed an RFC assessment. [AR 88-91.] He opined, in part, that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour workday, sit six hours in an eight-hour workday, push and/or pull with limitation, frequently climb ramps and stairs, stoop, and crouch, and occasionally balance, kneel and crawl, but never climb ladders, ropes, or scaffolds. [AR 88-89.]

### 3. Dr. Kumar

In November 2014, the consultative physician, Dr. Kumar, completed a comprehensive orthopedic evaluation and medical source statement. [AR 530-42.] Dr. Kumar diagnosed Plaintiff with chronic neck and low back pain without radiculopathy, status post arthroscopic surgery of the bilateral shoulders with status post acromioplasty and Mumford procedure, lateral epicondylitis or both elbows, carpal tunnel syndrome of both hands, probable trochanteric bursitis of both hips, and bilateral plantar fasciitis. [AR 534-35.] He opined that Plaintiff could stand and walk six hours in an eight-hour workday with appropriate breaks, sit six hours in an

eight-hour workday with appropriate breaks, frequently bend, stoop, kneel, and climb, lift and carry twenty pounds occasionally and ten pounds frequently, and perform occasional overhead activities with both upper extremities and frequent gripping and fine manipulative activities with both hands. [AR 536-37.]

The ALJ determined that, overall, the documented objective medical evidence was consistent with the capacity to perform a range of light work, including the ability to lift and carry twenty pounds occasionally and ten pounds frequently. [AR 35, 38, 40.] In making this determination the ALJ gave "great weight" to Dr. Kumar's and Dr. Estrin's opinions. [AR 40, 88-89, 536-37.] The ALJ stated that Dr. Fishman's opinion was given "weight," as it was "generally consistent with the objective evidence" and Plaintiff's RFC assessment. [AR 37.]

Plaintiff asserts the ALJ improperly "ignored" Dr. Fishman's opinion and failed to articulate legally sufficient reasons for rejecting his finding that limited Plaintiff to lifting fifteen pounds. [Pltf. Br. at 11-12.] Plaintiff's argument is not supported by the record.

First, contrary to Plaintiff's contention, the ALJ did not ignore Dr. Fishman's opinion. The ALJ expressly discussed Dr. Fishman's opinion regarding Plaintiff's lifting, carrying, and other limitations, as stated in his May 2013 permanent and stationary report and as affirmed in his September 2013 report. [AR 37, 476, 497.] The ALJ generally accepted Dr. Fishman's opinion, giving it weight, and finding it generally "consistent with the objective evidence" and an RFC for light work. [AR 35, 37-38.] However, the ALJ did not adopt Dr. Fishman's finding that limitedPlaintiff to lifting fifteen pounds, instead – after a thorough discussion of the evidence in toto – adopted the twenty pound conclusion of the other medical sources.[4] [AR 37-38.]

---

[4] The Court notes that the ALJ also declined to accept Dr. Fishman's finding that Plaintiff was restricted from using her bilateral upper extremities for *forceful* gripping or grasping activities. [AR 35, 457.] Instead, the ALJ found that Plaintiff

10

Second, the ALJ's decision reflects that Dr. Fishman's opinion limiting Plaintiff to lifting fifteen pounds was not adopted, as it was contrary to the weight of the "objective medical evidence." [AR 38]; *see Magallanes*, 881 F.2d at 755 (ALJ need not recite any "magic words" to support rejection of a physician's opinion when specific, legitimate inferences to justify the rejection of the opinion may be drawn from the ALJ's decision). In support of the decision to discount Dr. Fishman's opinion in part, the ALJ offered a detailed summary of the conflicting observations and findings made on examination. *See Thomas*, 278 F.3d at 957; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) (finding the "incongruity" between treating doctor's assessment of claimant's limitations and her medical records provided a specific and legitimate reason for rejecting the treating doctor's opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding discrepancy between a physician's notes, recorded observations, and opinions and the physician's assessment of claimant's limitations was a clear and convincing reason for rejecting the opinion). In reviewing Dr. Fishman's findings from his May 2013 permanent and stationary report, the ALJ observed that while Plaintiff had some residual pain in the right shoulder and bilateral bicep tendons, restricted range of motion in the right shoulder, and tenderness with palpation to the bilateral flexor/pronator groups and ulnar nerves, Plaintiff's epicondylar injections helped the pain and range of motion in the bilateral elbows, left shoulder arthroscopic surgery and rehabilitation helped with her symptoms, there was only slight swelling in the bilateral elbows, and there was no swelling, atrophy, asymmetry or ecchymosis in her bilateral shoulders or spasm of the shoulder girdle musculature. [AR 37.] Although the ALJ did not specifically state that Dr. Fishman's finding that limited Plaintiff to lifting fifteen pounds was being "rejected," he was not required to do so.

---

was limited to using her bilateral upper extremities for grasping no more than four hours in a workday. [AR 35.] Plaintiff does not contest the ALJ's consideration of this aspect of Dr. Fishman's opinion.

11

The ALJ's consideration of Dr. Fishman's opinion limiting Plaintiff to lifting fifteen pounds together with her detailed discussion of Dr. Fishman's conflicting medical findings and her conclusion that the objective medical evidence was consistent with the ability to perform light work, provided a specific and legitimate basis for discounting Dr. Fishman's opinion. *See Thomas*, 278 F.3d at 957 (ALJ can meet burden of rejecting a treating physician's opinion by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings); *Magallanes*, 881 F.2d at 755 (same).

Further, the ALJ reasonably fashioned an RFC with limitations that gave consideration to all of Plaintiff's medical history. An ALJ may choose to give "more weight" to an opinion which is "more consistent" with the evidence in "the record as a whole." *See* 20 C.F.R. § 404.1527(c)(4); *Andrews*, 53 F.3d at 1039 (holding that the ALJ is responsible for resolving conflicts in medical testimony and ambiguities). Here, the ALJ assigned "great weight" to the opinion of Dr. Kumar because he reviewed Plaintiff's medical records, evaluated Plaintiff, and his opinion was consistent with the evidence of record. [AR 40.] The ALJ summarized Dr. Kumar's findings, which showed that while Plaintiff had restricted range of motion and impingement sign in the left shoulder, there was minimally restricted range of motion in the cervical spine and lumbar spine with no evidence of radiculopathy, normal range of motion in the right shoulder, no weakness of the shoulder girdles, normal range of motion of the elbows, normal wrist exam except for positive Tinel sign, no focal sensory changes or muscle weakness in the median nerve distribution, and normal range of motion in the hands. [AR 39, 533.] The ALJ also gave "great weight" to the opinion of the state agency medical consultant, Dr. Estrin, because his assessment for light work was "consistent with the record as [a] whole." [AR 40.] Thus, considering the "documented objective medical evidence," the ALJ permissibly relied on Dr. Kumar's and Dr. Estrin's assessments regarding Plaintiff's lifting abilities as more consistent with the overall evidence of

record. [AR 38-40]; *see* 20 C.F.R. § 404.1527(c)(4); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (finding inconsistency between two doctors' conclusions regarding claimant's mental functioning "provided the ALJ additional justification for rejecting" one doctor's conclusions); *Tonapetyan*, 242 F.3d at 1149 (finding contrary opinions of the examining physician and non-examining physician constituted substantial evidence to support the ALJ's findings regarding the plaintiff's impairment and limitations). Although Plaintiff disagrees with the ALJ's conclusion, this Court must defer to the reasonable interpretations adopted by the ALJ when resolving inconsistencies in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996) ("[i]f the evidence can reasonably support either affirming or reversing" the ALJ's conclusion, the reviewing court "may not substitute its judgment" for that of the Commissioner); *Orn*, 495 F.3d at 630 (same); *see also Tommasetti*, 533 F.3d at 1041 ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence").

### C. ALJ's Duty to Develop the Record

Plaintiff contends the ALJ failed to properly assess the medical evidence, which showed that her condition worsened after October 2013. [Pltf. Br. at 12-13.] Plaintiff asserts that Dr. Fishman and Dr. Segil did not consider Plaintiff's sitting and standing limitations and Dr. Kumar did not address many of Plaintiff's medical records. [Pltf. Br. 13-14; AR 530.] In particular, Plaintiff notes that Dr. Kumar did not review a January 2015 MRI of Plaintiff's lumbar spine reflecting degenerative changes (i.e., multi-level disc desiccation and facet arthropathy with mild impingement at L4 and severe bilateral neural foraminal narrowing at L4-L5 and L5-S1) and an October 2013 lab report showing a positive antinuclear antibody ("ANA") test (*i.e.*, high ANA titer and speckled ANA pattern), which is claimed by Plaintiff to be indicative of lupus. [AR 629, 683-84.] Plaintiff also asserts that Dr. Kumar and other physicians did not review medical records post-dating October 2013 discussing her bilateral hip pain, bilateral knee pain, low back pain,

degenerative changes in the lumbar spine, joint pain, abnormal gait, decreased range of motion in the lower extremities, recovery from an Achilles tendon problem, slight limping gait, lupus diagnosis, and a second positive ANA test. [Pltf. Br. at 14-16 (citing AR 562, 566, 586, 593-94, 596, 599-601, 604-05, 607-09, 615-17, 620, 629-30, 635, 676).] Plaintiff argues that the ALJ should have developed the medical record further regarding Plaintiff's alleged lupus and lower extremity impairments by calling a medical expert to testify at the hearing, ordering a second consultative examination, or remanding the case to the state agency to further review the medical evidence.

Defendant argues that although Dr. Kumar did not have the lab results reflecting positive ANA tests and the 2015 lumbar spine MRI report, the evidence does not show any significant deterioration in Plaintiff's condition after October 2013. [Def. Br. at 8-9.] Further, Plaintiff did not even challenge the ALJ's determination that Plaintiff's alleged lupus was non-severe, as there was no objective evidence to confirm the diagnosis. [Def. Br. at 8.] And, because Dr. Kumar conducted a full orthopedic examination in November 2014 and his report indicated that he reviewed medical records through 2014, there was no support for Plaintiff's claim that Dr. Kumar's report was not complete. [Def. Br. at 8-9; AR 529-35.]

The ALJ has an independent duty to develop the record, even when the claimant is represented by counsel. *Tonapetyan*, 242 F.3d at 1150 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Nevertheless, it is the claimant's duty to prove disability. *Mayes v. Massanari*, 276 F.3d 453, 458 (9th Cir. 2001). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 276 F.3d at 459-60 (citing *Tonapetyan*, 242 F.3d at 1150).

Here, the ALJ had no obligation to develop the record further as the record was neither ambiguous nor inadequate.

### 1. Lupus

The ALJ determined that the record contained no work up or evidence to confirm that Plaintiff has systemic lupus erythematosus ("SLE"). [AR 34.] While the medical record contains a diagnosis of lupus from a nurse practitioner, positive ANA test results, and references to a rheumatology referral, the ALJ's conclusion is consistent with the record evidence. [AR 586, 594, 596, 599, 610, 633, 661, 676]; *see* SSR 06-03p ("other sources" cannot establish the existence of a medically determinable impairment). Moreover, Plaintiff's treatment records from the Assuta Medical Center in June and October 2014 indicate that Plaintiff's positive ANA test results did not support a diagnosis of lupus. [AR 664, 669, 671.] Plaintiff's records state that Plaintiff's positive ANA test results were not "stigmata of SLE" and were "nonspecific" symptoms for Plaintiff. [AR 664, 669, 671.] Thus, Plaintiff has failed to show that the evidence was ambiguous or inadequate to allow for proper evaluation of Plaintiff's alleged lupus.

### 2. Lumbar Spine and Lower Extremity Impairments

Plaintiff argues that the medical records show that her lumbar spine and lower extremity impairments worsened after October 2013, requiring the ALJ to develop the record further. [AR 562, 566, 593-94, 596, 599-601, 604-05, 607-09, 615-17, 630, 635.] However, Plaintiff fails to explain how these medical records undercut any of the physicians' opinions regarding her impairments or functional abilities. As discussed, Dr. Kumar gave Plaintiff a full orthopedic evaluation in November 2014 and stated that he reviewed medical records relating to treatment for a variety of medical problems through 2014. [AR 530.] He also specifically acknowledged Plaintiff's complaints of diffuse back pain and bilateral lower extremity joint pain. [AR 530.] Following his physical examination of Plaintiff, Dr. Kumar reported, in part, that Plaintiff was unable to walk on her heels and toes, had a mildly restricted range of motion in the back, tenderness in the lumbar paraspinal region, hip pain, pain with axial rotation of the trunk, positive Faber test on the right hip with lateral

joint tenderness in the bilateral hips over the trochanteric bursa, tenderness in the heels bilaterally and inability to walk on heels and toes. [AR 532-36.] Based on the physical examination and his own clinical observations, Dr. Kumar assessed, in part, chronic neck and low back pain without radiculopathy, probable trochanteric bursitis of both hips, and bilateral plantar fasciitis and opined that Plaintiff had work limitations that were generally consistent with the ALJ's RFC, including the ability to stand and walk six hours in an eight-hour workday with appropriate breaks, sit six hours in an eight-hour workday with appropriate breaks, and frequently perform bending, stooping, kneeling, and climbing activities. [AR 536-41.] While Dr. Kumar did not have the opportunity to review Plaintiff's January 2015 lumbar spine MRI, Plaintiff has not shown that Plaintiff's lumbar spine condition or lower extremity impairments significantly worsened after Dr. Kumar's November 2014 examination. [AR 532-36, 683-84.] In sum, the medical records cited by Plaintiff did not create an ambiguity with respect to Plaintiff's abilities or medical conditions nor was the record inadequate to allow for proper evaluation of the evidence.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS ORDERED.**

DATED: March 20, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE